THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DONALD L. McINTOSH, Appellant.

County Court, Jefferson County, August 28, 1962.

*Charles J. La Belle* for appellant. *Angus G. Saunders, District Attorney* (*Leonard Marsh* of counsel), for respondent.

MILTON A. WILTSE, J.   The defendant was convicted on October 20, 1961 of violation of section 1 of the Village Ordinance of the Village of Sackets Harbor, New York, after a trial before the Honorable LEON MARVIN, Police Justice.   Judgment was entered on that day.

The section of the ordinance referred to prohibits the operation of a motor vehicle within the corporate limits at a speed in excess of 30 miles an hour.   Ambulances, fire and police vehicles when on emergency trips are exempt from its provisions.

Defendant has appealed.   Although several errors are alleged, only two of them are discussed herein.   One is that the People failed to establish beyond a reasonable doubt that the defendant was, in fact, exceeding the speed limit within the village.   The other is that the defendant, being a Game Protector in the Bureau of Law Enforcement of the Conservation Department was exempt from prosecution for such a charge by virtue of sections 101 and 1104 of the Vehicle and Traffic Law.

It appears that the defendant was employed by the Conservation Department of the State of New York as a Game Protector in the Bureau of Law Enforcement on the date of the alleged

violation, June 18, 1961; that he had been patrolling on Lake Ontario during that day, with another employee of the Conservation Department, and that they had returned in the boat which they were using, to the Village of Sackets Harbor at about 6:30 o'clock in the evening, landing at the boathouse where the craft was ordinarily located when not in use. Before the defendant left the premises, the other employee of the department informed him of the substance of an anonymous telephone complaint that he had just received. This complaint related to the allegation that someone was unlawfully spearing bass in Bedford Creek, which is located just outside of the Village of Sackets Harbor, and approximately four miles from the place where the boat was docked.

The defendant proceeded in his State-owned Conservation vehicle toward Bedford Creek, driving through the village to reach his destination.

The route that he used, although not the shortest route to his home residence in the Village of Adams, in the same county, was one that he sometimes did use in going to, or from the Conservation boat at Sackets Harbor. The defendant was followed by one John E. Leuze, Chief of Police of the Village of Sackets Harbor, for about 8/10th of a mile on the Campbell's Point Road within the village, the Police Chief's car being some 500 yards behind the defendant's vehicle during that period.

Officer Leuze stated that he had been operating automobiles for 35 years; that as a police officer, he operated an automobile for approximately 12 hours a day, 6 days a week, and drove approximately 20,000 miles a year; that in connection with his duties, he had formed opinions and made estimates of the speed of motor vehicles traveling on the highway; that he had tested his opinion of speed with a "measured mile", with standard speedometers furnished by the State to test calibration, and other measuring devices; that his opinion of speed was usually accurate within five miles an hour, one way or the other; that in his opinion, defendant's automobile was proceeding at about 55 miles an hour, and that at the same time, his speedometer indicated a speed of "just below the sixty mark".

The officer stated that his view was not obstructed by any other vehicles as he followed the defendant, and that when he apprehended the defendant, he said that he was "going home to supper".

The officer was qualified to give his opinion regarding speed. His opinion evidence, together with the testimony regarding the speedometer reading, is sufficient to sustain the conviction, unless the Game Protector should be allowed by law to exceed the maxi-

mum speed limit by virtue of the sections of the Vehicle and Traffic Law, to which reference has been made. (*People* v. *Heyser*, 2 N Y 2d 390.)

Section 101 of the Vehicle and Traffic Law defines an authorized emergency vehicle. Among the vehicles mentioned in that category is, "every state-owned vehicle operated by a law enforcement officer of the conservation department when engaged in the performance of duty in enforcement of the conservation law".

Section 1104 of the Vehicle and Traffic Law reads as follows:

"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(b) The driver of an authorized emergency vehicle may:

"1. Stop, stand or park irrespective of the provisions of this title;

"2. Proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation;

"3. Exceed the maximum speed limits so long as he does not endanger life or property;

"4. Disregard regulations governing directions of movement or turning in specified directions.

"(c) Except for an authorized emergency vehicle operated as a police vehicle, the exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of any said vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle.

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others".

Whether the defendant's trip through the village toward Bedford Creek, in response to an anonymous message, was an emergency call in connection with the performance of his duties, or the pursuit of an actual or suspected violator of the law, was a question of fact for the Police Justice to determine. It is implicit in the finding of guilt that it was not so considered.

The transcript of the testimony also reveals that the defendant proceeded on to Bedford Creek after having been stopped by the police officer, and found no person violating the law there. It might also be mentioned that the Game Protector's vehicle was not equipped with all of the various accessories mentioned in subdivision (c) of section 1104.

Employees of the Conservation Department perform a most commendable and necessary duty in protecting the natural resources of our State. It is not believed, however, that the verdict of the Police Justice should now be disturbed under the circumstances present here.

An emergency has been defined in Black's Law Dictionary as, " A sudden unexpected happening; an unforeseen occurrence or condition; specifically, perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity."

On the entire record, it does not appear that there was any pressing necessity or urgency for the Game Protector to travel at almost 60 miles an hour in a 30-mile an hour zone. Neither was there actually any suspected violator of the law being pursued.

The guilt of the defendant was established beyond a reasonable doubt. The judgment of conviction is affirmed in all respects.